SHEPHERD, J.
This is an appeal from an order denying a motion for a judgment in accordance with a prior motion for directed verdict in a personal injury case arising out of an altercation which occurred in a bar parking lot. The decisive issue presented is whether Appellant, Robert J. Reider, owed a duty of care to Appellee, Dennis J. Dorsey, when Dorsey was struck from behind by an independent third party while Reid-er and Dorsey carried on. On de novo review, we find that Reider did not owe a duty of care to Dorsey to prevent the independent act of the third party and accordingly, reverse and remand this case for entry of judgment in favor of Reider. A brief recitation of the facts of the case is necessary to explain our decision.
I. Facts
On August 31, 2007, Dorsey was drinking with Reider and Reider’s friend, Russell Noordhoek, at a neighborhood bar. All three men were intoxicated over the legal limit. While in the bar, Reider became boisterous and belligerent, saying he wanted to fight everyone. Dorsey finally told Reider he was “acting like an asshole,” stood up, and walked out of the bar. Reider and Noordhoek followed, with Reider demanding to know why Dorsey called him an “asshole.” Dorsey ignored Reider and kept walking.
Dorsey’s path took him between Reid-er’s parked truck and an adjacent car. As Dorsey walked between the vehicles, Reid-er hustled around the other side of his truck and managed to trap Dorsey between the truck bed of his truck and the adjacent car before Dorsey was able to emerge from between the vehicles. Noor-dhoek followed Dorsey between the vehicles. Reider continued to accost Dorsey over the epithet.
Several minutes into the altercation, Dorsey heard the truck’s door open behind him, turned, and saw Noordhoek reach into Reider’s truck and retrieve a tomahawk — a tool which Reider uses as part of his work to help him clear land. Dorsey turned back to Reider and asked, “what is this?” There was no response. Dorsey then grabbed Reider and attempted to push him to one side in order to escape. Dorsey testified the two men grappled for about fifteen seconds, when all of a sudden, Noordhoek struck Dorsey in the head with the tomahawk, rendering him temporarily unconscious. Noordhoek and Reider fled the scene. Dorsey regained consciousness and drove himself to the hospital. Reider could recall nothing about the tomahawk or Noordhoek’s actions.[1]
A jury returned a verdict for Dorsey, awarding $10,342 for past medical expenses, $40,855 for past lost wages, $669,600 for past pain and suffering, and $850,000 for future pain and suffering.
II. Duty of Care
“[Wjhether a duty of care exists in a negligence action is a question of law.” Michael & Philip, Inc. v. Sierra, 776 So.2d 294, 296 (Fla. 4th DCA 2000). Under Florida law, there is generally “no duty to control the conduct of a third person to prevent him or her from causing physical harm to another.” Carney v. Gambel, 751 So.2d 653, 654 (Fla. 4th DCA 1999). It is indisputable in this case that Dorsey was injured by Noordhoek, not Reider. However, there are three very limited exceptions to this general rule. They arise if, “at the time of the injury, the defendant is in actual or constructive control of: (1) the instrumentality; (2) the premises on which the tort was committed; or (3) the tortfea-sor.” Michael & Philip, Inc., 776 So.2d at *1226 297-98.[2] Dorsey argues that Reider can be held liable under the first and third exceptions. We disagree.
A. Control of the Instrumentality
Dorsey first argues Reider is liable because he owned the injury-causing instrumentality (the tomahawk) and knew Noordhoek was standing next to his unlocked truck with the tomahawk inside. Mere ownership of the injury-causing instrumentality is insufficient. Rather, an individual has a duty to prevent the misconduct of others where the defendant, at the time of the injury, is in “actual or constructive control” of the instrumentality used to injure the plaintiff. Id. For this exception to apply, Reider must have had actual or constructive control of the tomahawk at the time of Dorsey’s injury. Although Reider had control over the tomahawk while it was in his truck, that control ended once Noordhoek reached into the truck and removed the tomahawk without permission. Therefore, at the time of the injury, Reider did not have actual or constructive control over the instrumentality. This case is analogous to those in Florida that address an owner’s liability with respect to a third party’s unauthorized use of a gun. In those instances, case law states that “the owner ... is not liable for its negligent use by another unless the owner is negligent in entrusting the gun to the tort-feasor.” Mercier v. Meade, 384 So.2d 262, 263 (Fla. 4th DCA 1980). In this case, it hardly can be said Reider “entrusted” the tomahawk to Noordhoek; rather, Noordhoek gained control of the tomahawk through his independent action of taking it from Reider’s truck without permission. Therefore, Reider has no duty under this exception.
B. Control over the Tortfeasor
We judge the applicability of this exception through a “foreseeable zone of risk” analysis. The Florida Supreme Court has stated that “where a defendant’s conduct creates & foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.” McCain v. Fla. Power Corp., 593 So.2d 500, 504 (Fla.1992). In applying the foreseeable zone of risk test, we evaluate “whether the type of negligent act involved in a particular case has so frequently previously resulted in the same type of injury or harm that ‘in the field of human experience’ the same type of result may be expected again.” Michael & Philip, Inc., 776 So.2d at 296-97 (quoting Palm Beach-Broward Med. Imaging Ctr., Inc. v. Cont’l Grain, 715 So.2d 343, 344 (Fla. 4th DCA 1998)).
Dorsey argues the qualifying acts in this case are: (1) Reider’s failure to lock the doors of his truck before he went into the bar or at the time he accosted Dorsey in the parking lot;[3] and (2) Reider’s thwarting Dorsey’s efforts to escape after Noor-dhoek retrieved the tomahawk from Reid-er’s vehicle. We find neither contention persuasive.
As to Dorsey’s first contention, Michael & Philip, Inc. is instructive. In that case, Sheldon Golding went to a Fort Lauder-dale World Gym for a workout. Michael & Philip, Inc., 776 So.2d at 295. He *1227 parked his Lexus in front of the gym, went inside, and hung his keys on a keyboard near the front desk. Id. at 297. Michael Smallcorn, the president and co-owner of World Gym, was attending the front desk that day. Id. at 295. At one point he greeted a man, later identified as Craig Caruso, who entered the gym and bought a shake from the front desk’s juice bar. Id. When no one was looking, Caruso took Golding’s keys from the keyboard, went into the parking lot, and stole the Lexus. Id. at 295-96. During his escape, Caruso caused an accident in which he injured Sierra. Id. at 296. Sierra sued World Gym for her injuries, claiming it created the general condition which led to the theft and attempted escape, and a jury ultimately awarded her money damages. Id.
World Gym appealed, arguing it owed no legal duty of care to prevent the injuries caused to Sierra. Id. The Fourth District Court of Appeal agreed. The court noted the keyboard had been in the same location for years, yet there had been no prior instances of theft. Id. The court stated: “Absent some evidence of a history of thefts from World Gym’s premises, we cannot say that a reasonable man could or should have foreseen an automobile theft and accident in this situation.” Id. at 299. Similarly in this case, a duty of care could exist only if keeping a tool in a truck “has so frequently previously resulted in the same type of injury or harm that in the field of human experience the same type of result may be expected again.” Id. At 296-97. In our view, the facts in the instant case do not satisfy that test.
Undoubtedly, many citizens of this state keep tools of their trade in vehicles. Those tools might be an axe, a hammer, or heavy briefcase. A recreational golfer may keep his golf clubs in his car, and any Florida resident may carry an umbrella. While it may be prudent for the vehicle owner to lock his car, the field of human experience does not lead us to expect that an acquaintance of ours might take such an item from a vehicle in a parking lot and use it to strike another acquaintance in the back of the head.
On this point, the district courts’ decisions in Mathis v. American Fire & Cas Co., 505 So.2d 652 (Fla. 2d DCA 1987), and Keenan v. Oshman Sporting Goods, Co., 629 So.2d 210 (Fla. 5th DCA 1993), also are instructive. In Mathis, a husband left his handgun in his wife’s car and then went out of town. Mathis, 505 So.2d at 652. That evening, the wife found the gun and shot Mathis. Id. Mathis sued for damages, claiming the husband was liable for providing his wife with the gun. Id. The trial judge rendered summary judgment in the husband’s favor, and Mathis appealed. Id. On review, the Second District Court of Appeal stated the husband had, at best, provided his wife with “naked possession or custody of, or access to” the gun. Id. at 653. Concluding there were “no facts indicating any type of invitation by the husband to the wife that she use the gun,” it affirmed the trial court. Id.
Likewise in Keenan, Oshman Sporting Goods was in the business of selling handguns. Keenan, 629 So.2d at 210 (Dauksch, J., dissenting).[4] It kept a display case which was said to be so defective as to allow ready access to many of the guns. Id. Several of those guns were stolen, and the thief later used one to kill Keenan. Id. Keenan sued Oshman for damages, but the trial court determined it did not owe her any duty of care. Id. The Fifth District *1228 Court of Appeal affirmed that decision. Id.
These three cases share a common theme: Merely providing access to an instrument — even a potentially dangerous one and even if that access is the result of negligence — does not equate to a duty to control another person’s use of that instrument. Applying that rule to this case, the most that can be said is that Noordhoek seized the opportunity to gain access to the tomahawk. Reider did not affirmatively give it to him, authorize him to take it, or in fact even know he had taken it. Thus, Reider had neither the duty nor the ability to control Nordhoek’s conduct.
Dorsey finally asserts Reider created a foreseeable zone of risk by deliberately blocking Dorsey’s escape effort, enabling Noordhoek to strike. It might be, indeed it is probable, that Reider’s resistance to Dorsey’s effort to escape Noordhoek’s blow enabled the strike. However, there is no record evidence Reider colluded with Noordhoek to harm Dorsey, or that Reider knew Noordhoek had the tomahawk in his hand before the strike.[5] On the contrary, the record is clear Reider’s main purpose for following Dorsey out of the bar was to inquire and confront Dorsey about calling Reider an “asshole” before leaving the bar. As Dorsey himself testified, the main reason Reider confronted him in the parking lot was because “he [Reider] wanted to know why I called him an asshole,” and rather than being intent on fighting, Reider “seemed to be calming down a bit” after conversing with Dorsey.
III. Conclusion
For the foregoing reasons, Reider did not owe a relevant duty of care to Dorsey when Dorsey was attacked and therefore cannot be held liable for his injuries. The trial court’s order is hereby reversed and remanded for entry of judgment for Appellant Reider.
Reversed and remanded with directions.

. Reider’s only recollection of the altercation was being pushed by Dorsey.

. As a further exception to the general rule of non-liability for third-party misconduct, Florida has adopted the "special relationship” test set forth in the Restatement (Second) of Torts, section 315 (2012). Michael & Philip, Inc., 776 So.2d at 298. Dorsey does not advance this exception as a ground for affirmance in this case.

. The evidence indicated Reider had a remote key device in his pocket.

. Keenan was a per curiam affirmance, wherein the facts and arguments were described in a single judge's dissenting opinion.

. As previously stated, Reider could not remember the incident. When Dorsey testified, the trial court permitted him to opine over objection that Reider had in fact seen Noor-dhoek with the tomahawk. That, of course, was error. See Rutherford v. Moore, 774 So.2d 637, 646 (Fla.2000) (emphasis added) (“A witness is incompetent to testify if the trial court determines the witness is ... (3) unable to perceive and remember the events.”). Noordhoek did not testify at the trial. The jury received no competent evidence from which it could have inferred Reid-er knew Noordhoek was about to insert himself into the fray.