LABARGA, J.
Dennis J. Dorsey seeks review of the decision of the Third District Court of Appeal in Reider v. Dorsey, 98 So.3d 1223 (Fla. 3d DCA 2012), based on misapplication conflict with the decision of this Court in McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992), on a question of law.[1] We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons set forth below, we quash the decision of the Third District in Reider and remand for proceedings consistent with this decision.
FACTS AND PROCEDURAL HISTORY
Dennis J. Dorsey brought a personal injury action against Robert J. Reider in the circuit court for Miami-Dade County for injuries Dorsey sustained in 2007 in an altercation that occurred when Dorsey was at bar with Reider and Reider’s friend, Russell Noordhoek, in Pinecrest, Florida. A jury trial was held and the jury returned a verdict for Dorsey, awarding $10,342 for past medical expenses, $40,855 for past lost wages, $669,600 for past pain and suffering, and $850,000 for future pain and suffering. The trial court denied Reider’s motion for a judgment in accordance with his prior motion for a directed verdict. The facts concerning the altercation are set forth in the decision of the district court below as follows:
On August 31, 2007, Dorsey was drinking with Reider and Reider’s friend, Russell Noordhoek, at a neighborhood bar. All three men were intoxicated over the legal limit. While in the bar, Reider became boisterous and belligerent, saying he wanted to fight everyone. Dorsey finally told Reider he was “acting like an asshole,” stood up, and walked out of the bar. Reider and Noordhoek followed, with Reider demanding to know why Dorsey called him an “asshole.” Dorsey ignored Reider and kept walking.
Dorsey’s path took him between Reid-er’s parked truck and an adjacent car. As Dorsey walked between the vehicles, Reider hustled around the other side of his truck and managed to trap Dorsey between the truck bed of his truck and the adjacent car before Dorsey was able to emerge from between the vehicles. Noordhoek followed Dorsey between the vehicles. Reider continued to accost Dorsey over the epithet.
Several minutes into the altercation, Dorsey heard the truck’s door open behind him, turned, and saw Noordhoek reach into Reider’s truck and retrieve a tomahawk — a tool which Reider uses as part of his work to help him clear land. Dorsey turned back to Reider and asked, “what is this?” There was no response. Dorsey then grabbed Reider and attempted to push him to one side in order to escape. Dorsey testified the two men grappled for about fifteen seconds, when all of a sudden, Noordhoek struck Dorsey in the head with the tomahawk, rendering him temporarily unconscious.[2] Noordhoek and Reider fled *863 the scene. Dorsey regained consciousness and drove himself to the hospital. Reider could recall nothing about the tomahawk or Noordhoek’s actions.
Reider, 98 So.3d at 1225. Dorsey had been acquainted with Reider, but Dorsey had never met Noordhoek before that night.
On appeal, the Third District Court of Appeal reversed and remanded for entry of a judgment for Reider, holding that Reider did not owe a relevant duty of care to Dorsey when Dorsey was attacked by Noordhoek, and cannot be held liable for Dorsey’s injuries. Id. at 1228. The district court held that “[i]t might be, indeed it is probable, that Reider’s resistance to Dorsey’s efforts to escape Noordhoek’s blow enabled the strike.” Id. at 1228. Even so, the district court concluded that there was no evidence Reider “colluded with Noordhoek” or knew that Noordhoek had the tomahawk and would strike Dorsey. Id. Because collusion with Noor-dhoek or advance knowledge of the exact injury that might be inflicted on Dorsey are not the tests for determining if Reider owed Dorsey a duty of care under these circumstances, we quash the decision below.
ANALYSIS
We recognized in McCain that the duty of care arises from four potential sources: (1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case. 593 So.2d at 503 n. 2 (emphasis added) (citing Restatement (Second) of Torts § 285 (1965)). We also explained in McCain that the determination of the existence of a common law duty flowing from the general facts of the case depends upon an evaluation and application of the concept of foreseeability of harm to the circumstances alleged. Id. at 502-04. When a person’s conduct is such that it creates a “foreseeable zone of risk” posing a general threat of harm to others, a legal duty will ordinarily be recognized to ensure the conduct is carried out reasonably. Id. at 503. “The duty element of negligence focuses on whether the defendant’s conduct fore-seeably created a broader ‘zone of risk’ that poses a general threat of harm to others.” Id. at 502. This requirement is a “minimal threshold legal requirement for opening the courthouse doors.” Id. (footnote omitted). Once the courthouse doors are opened based on the existence of a legal duty, the proximate cause element still remains and “is concerned with whether and to what extent the defendant’s conduct foreseeably and substantially caused the specific injury that actually occurred.” Id.
We explained in McCain:
The statute books and case law, in other words, are not required to catalog and expressly proscribe every conceivable risk in order for it to give rise to a duty of care. Rather, each defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result. This requirement of reasonable, general foresight is the core of the duty element. For the same reasons, duty exists as a matter of law and is not a factual question for the jury to decide: Duty is the standard of conduct given to the jury for gauging the defendant’s factual conduct. As a corollary, the trial arid appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant.
Id. at 503. We further cautioned in McCain that it is important to note the difference between the type of foreseeability required to establish duty as opposed to that which is required to establish proximate causation — establishing the exis *864 tence of a duty is primarily a legal question and requires demonstrating that the activity at issue created a general zone of foreseeable danger of harm to others. Id. at 502. Establishing proximate cause requires a factual showing that the dangerous activity foreseeably caused the specific harm suffered by those claiming injury. Id. We conclude that the district court erred in finding the facts of this case did not establish a legal duty on the part of Reider. His conduct in blocking Dorsey’s ability to escape from the escalating situation created a foreseeable zone of risk posing a general threat of harm to others. We turn next to the question of whether Reider’s duty to Dorsey extended to injuries caused by the misconduct of a third person, Noordhoek.
In the instant case, the district court correctly noted that generally a party has no legal duty to prevent the misconduct of third persons. See Reider, 98 So.3d at 1225 (citing Carney v. Gambel, 751 So.2d 653, 654 (Fla. 4th DCA 1999)); see also K.M. ex rel. D.M. v. Publix Super Markets, Inc., 895 So.2d 1114, 1117 (Fla. 4th DCA 2005). We also agree with the district court that in determining the duty of care concerning misconduct of third persons, the courts have carved out exceptions where such a duty might arise: where “the defendant is in actual or constructive control of: (1) the instrumentality; (2) the premises on which the tort was committed; or (3) the tortfeasor.” See Reider, 98 So.3d at 1225-26 (quoting Michael & Philip, Inc. v. Sierra, 776 So.2d 294, 297-98 (Fla. 4th DCA 2000)). In deciding if Reid-er met any of these exceptions, the district court indicated that it would judge the applicability of the exceptions through the “foreseeable zone of risk” analysis set forth in McCain and the requirement that “where a defendant’s conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon the defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.” Reider, 98 So.3d at 1226 (quoting McCain, 593 So.2d at 504). However, in applying this foreseeable zone of risk test, the district court concluded that it must “evaluate whether the type of negligent act involved in a particular case has so frequently previously resulted in the same type of injury or harm that ‘in the field of human experience’ the same type of result may be expected again.” Reider, 98 So.3d at 1226 (quoting Michael & Philip, Inc., 776 So.2d at 296-97) (quoting Palm Beach-Broward Med. Imaging Ctr., Inc. v. Cont’l Grain Co., 715 So.2d 343, 345 (Fla. 4th DCA 1998)). This interpretation of our McCain decision and the proper test to be applied when determining if the defendant’s conduct has created a broad zone of foreseeable risk is incorrect. We made clear in McCain that “[a]s to duty, the proper inquiry for the reviewing appellate court is whether the defendant’s conduct created a foreseeable zone of risk, not whether the defendant could foresee the specific injury that actually occurred.” 593 So.2d at 504. The facts of this case clearly establish that Reider’s conduct created a broader zone of foreseeable risk to Dorsey. The inquiry then turns to whether the duty of care created by this conduct extends to the misconduct of Noordhoek, a third party.
The district court concluded that evidence showing Reider failed to lock his truck doors and that he thwarted Dorsey’s efforts to escape both before and after Noordhoek retrieved the tomahawk from the truck was not evidence establishing that Reider had actual or constructive control over the instrumentality or over Noor-dhoek’s conduct. Reider, 98 So.3d at 1226. The cases cited by the district court to support this conclusion are inapposite. In Michael & Philip, the Fourth District Court of Appeal concluded that a gymnasi *865 um had no liability for injuries caused when an individual took a patron’s keys from an unsecured area and stole that patron’s car. The district court in Michael & Philip held that “the foreseeable zone of risk created by the placement of a key board on a gymnasium wall does not include a motorist injured many miles and many hours away.” 776 So.2d at 299. In the instant case, the foreseeable zone of risk was created by Reider immediately next to his unsecured truck in which the weapon was located and accessible to Noordhoek, and Reider was present and participating in the altercation when the injury was inflicted. The district court below also relied on Mathis v. American Fire & Casualty Co., 505 So.2d 652 (Fla. 2d DCA 1987), and Keenan v. Oshman Sporting Goods, Co., 629 So.2d 210 (Fla. 5th DCA 1998), in which the courts held that gun owners had no duty of care to the injured parties when third parties took the owners’ guns and shot the plaintiffs’ decedents. In Mathis, the gun owner was out of town when his wife found his gun and killed Mathis. Mathis, 505 So.2d at 652. In Keenan, the gun was stolen from a store’s gun display case, and the thief later used the gun to kill the plaintiffs decedent. See Keenan, 629 So.2d at 210 (Dauksch, J., dissenting to per curiam af-firmance).
After discussing these cases, the district court below stated, “These three cases share a common theme: Merely providing access to an instrument — even a potentially dangerous one and even if that access is the result of negligence — does not equate to a duty to control another person’s use. of that instrument.” Reider, 98 So.3d at 1228. However, in none of those cases were the defendants present and able to exercise any control over the instrumental-ities when the injuries occurred. In this case, Reider was present and had the ability to control access to his truck in which the tomahawk was located. As the district court noted, the evidence indicated that Reider had a remote key device in his pocket. See Reider, 98 So.3d at 1226 n. 3. Moreover, Reider did not “merely provide access” to the tomahawk, he blocked Dorsey’s escape and was present when the instrument was used to injure Dorsey. And, significantly, Reider was in a position to retake control of the tomahawk and prevent the injury — Dorsey testified that when Noordhoek took the tomahawk out of Reider’s truck, Dorsey asked Reider: “Bobby, what is this?” Dorsey testified that ten or fifteen seconds passed before he was struck. In that amount of time, Reider had the opportunity to see Noor-dhoek with the tomahawk before Noor-dhoek struck Reider. We conclude that the totality of the circumstances takes this case out of the “general rule” that one is not liable for injuries caused by a third party.
Reider left a dangerous tool in his unlocked truck, fully accessible to his friend Noordhoek, who obtained the tomahawk and injured Dorsey while Reider was present and blocking Dorsey’s escape. Not only did Reider have, constructive control over the instrumentality, he had actual control over the area — that is, “the premises” — in which Dorsey was trapped and injured.
The district court also concluded that a foreseeable zone of risk was not created by Reider blocking Dorsey’s escape because, although it was probable that such conduct did enable Noordhoek to strike Dorsey with the tomahawk, Reider did not have advance knowledge that Noordhoek was going to do so. Id. However, our McCain decision does not require that to find a duty of care under these circumstances, there must be evidence that the defendant colluded with the third party to cause harm or knew exactly what form that harm might take — only that his conduct created a general zone of *866 foreseeable danger of harm. The exact type of injury that results is not required to be anticipated. See McCain, 593 So.2d at 502, 504.
As we have explained, establishing the existence of a duty requires demonstrating that the activity foreseeably created a “broader ‘zone of risk’ that poses a general threat of harm to others.” Id. at 502. The facts of this case show that Reider’s actions created a broader zone of risk that posed a general threat of harm to others, ie., Dorsey, who was between the two men and unable to escape. The minimal legal threshold to establish duty was therefore met. Whether that duty was breached in a particular instance is ordinarily reserved for the fact-finder. See Williams v. Davis, 974 So.2d 1052, 1057 n. 2 (Fla.2007) (citing McCain, 593 So.2d at 504). We also conclude that this case meets the exception to the general rule that a duty of care does not extend tó misconduct of third parties. Under the specific facts of this case, Reid-er’s duty of care extended to the misconduct of a third party, Noordhoek. Thus, the district court misapplied our precedent in McCain when it concluded as a matter of law that the evidence failed to demonstrate that Reider owed a legal duty of care to Dorsey under the facts of this case.
CONCLUSION
For the foregoing reasons, we quash the decision of the Third District in Reider v. Dorsey and remand this case for reinstatement of the trial court’s judgments.
It is so ordered.
PARIENTE, QUINCE, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, C.J., concurs.
LEWIS, J., recused.

. See Jaimes v. State, 51 So.3d 445, 446 (Fla.2010) (identifying misapplication of decisions as a basis for express and direct conflict jurisdiction under article V, section 3(b)(3), Florida Constitution); Wallace v. Dean, 3 So.3d 1035, 1040 & n. 6 (Fla.2009) (same).

. The medical testimony established that Dorsey suffered a closed head injury, neck injury, and other injuries, including a severe laceration to his head, closed fracture of his nasal bones, and nerve damage causing long-term numbness in the back of his head and neck. The injuries also resulted in blurred vision, dizziness, and chronic headaches.