[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12817

Non-Argument Calendar

_____

INSIGHT SECURITIES, INC.,
a Delaware corporation,

Plaintiff-Appellant,

INTELLIGENICS, INC.,
a Delaware corporation,

Plaintiff,

versus

DEUTSCHE BANK TRUST COMPANY AMERICAS,
a New York Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-23864-RNS

_____

Before JORDAN, NEWSOM, and LAGOA, Circuit Judges.

PER CURIAM:

Insight Securities, Inc. ("Insight"), a securities broker/dealer, claims that Deutsche Bank Trust Company Americas's ("Deutsche") alleged negligence in transferring and selling securities belonging to Insight's clients through a Deutsche account involved in a Ponzi scheme caused Insight to suffer serious harm. The district court dismissed Insight's complaint, finding that Insight failed to allege a basis for any duty of care Deutsche owed to Insight and that Insight's complaint was devoid of factual allegations identifying damages Insight had suffered in connection with its customers' losses.

On appeal, Insight claims that the district court's dismissal was in error. Insight also asserts that the district court abused its discretion in several of its case management rulings under Federal Rule of Civil Procedure 16, which Insight claims limited its ability to amend its complaint to address deficiencies in its complaint that

ultimately led to its dismissal.  And Insight, for the first time on appeal, raises potential new theories of liability against Deutsche.  For the reasons stated below, we conclude that none of Insight's arguments have merit and affirm the district court's dismissal.

## I.     FACTUAL AND PROCEDURAL HISTORY

### A.     Underlying Conduct

Our discussion of the facts comes from the allegations contained in Insight's second amended complaint, which is the operative complaint.  Fernando Haberer was a con man.  He ran a Ponzi scheme that ultimately failed, but not before he funneled millions of dollars of his clients' assets into the scheme.  Haberer was the principal of Biscayne Capital S.A ("Biscayne").  Through Biscayne, he held power of attorney for Rado Limited Partnership ("Rado"), a New Zealand limited partnership that had an account with Deutsche.  He also enjoyed power of attorney over three entities that had accounts at Insight: Bralisol Associates Ltd. ("Bralisol"), Clodi Holdings, Ltd. ("Clodi"), and Maria De Los Angeles Aparain Borjas ("Aparain").  All three of these entities gave power of attorney to execute trades in their Insight accounts to Total Advisors, LLC ("Total"), of which Haberer was the principal.  In short, Haberer had authority to execute trades and manage the assets for the Rado, Bralisol, Clodi, and Aparain accounts, as the principal at Biscayne and Total.

While acting as an investment advisor, Haberer was also operating a Ponzi scheme.  The scheme, the details of which are not

relevant to this appeal, consisted of a real estate venture gone bad. Haberer and his cohorts would issue notes known as Biscayne Proprietary Products, ostensibly to develop south Florida real estate. Haberer and the other members of the scheme used money from new investors to pay off old investors to provide the illusion of profitability.

As the scheme unraveled, Haberer, on behalf of Rado, directed Deutsche to buy approximately $12 million of notes in the scheme.  Deutsche advanced this money and made the purchases.[1] But Rado's account did not have $12 million to buy these shares, putting the account in an overdraft.  Deutsche, unsurprisingly, wanted its money back and demanded that Rado deposit sufficient funds in its account to cover the overdraft, or else it would be forced to start liquidating Rado's positions.  Haberer, in an attempt to placate Deutsche, provided documents indicating he had control over accounts with assets that could cover the overdraft.

Struggling to stay above water, Haberer decided to use the other accounts over which he held power of attorney to cover

---

[1] Two Deutsche employees approved the purchase of the notes for the Rado account, despite Deutsche's purchasing agent not being able to accurately determine the value of the notes.  The employees turned to Biscayne to price the notes.  A supervisor at Deutsche put a stop to this valuation method on April 24, 2018.  The two Deutsche employees then continued to engage in questionable financial activities and decisionmaking in order to maintain the Rado account's standing with Deutsche.  Ultimately, the notes were in default for over a year before Deutsche put the Rado account in overdraft.

Rado's overdraft.  He submitted transfer instructions to Insight for the Bralisol, Clodi, and Aparain accounts and assured his contacts at Deutsche that he had instructions to transfer securities to the Rado account.  Haberer—through Total—instructed Insight to transfer securities in the Insight accounts to Deutsche.  The transfer instructions stated that Insight was to transfer securities for further credit to Bralisol, Clodi, and Aparain at their Deutsche accounts.  One of the accounts Haberer listed in the instructions was the Rado account.

Deutsche, upon receiving notice of the transferred securities from its clearing agent, State Street Bank and Trust Company, deposited the securities into Rado's account and promptly sold them to cover the overdraft.  But Insight had provided instructions that the securities were for the benefit and credit of Bralisol, Clodi, and Aparain, and were to be deposited into non-existent accounts at Deutsche in those customers' names.  The instructions did not give Deutsche permission to transfer the funds to Rado's account.  Ultimately, Bralisol, Clodi, and Aparain lost their investments when Deutsche liquidated them to cover the Rado overdraft at Haberer's instructions.

6                    Opinion of the Court                  21-12817

## B.     District Court Proceedings

Insight and Intelligenics, Inc.,[2] then filed a complaint against Deutsche, alleging one count of negligence.  Insight argued that Deutsche failed to exercise due care when it received these suspicious requests and should have rejected the transfer requests for these non-clients to non-existent accounts.  According to Insight, "[i]t was reasonably foreseeable that . . . [Deutsche's] negligent acts would financially injure Insight, which had custody of those assets and had initiated the transfers."  Deutsche's failure meant that Insight was "ultimately damaged."

After the district court entered its scheduling order, which set a January 7, 2021, deadline to amend pleadings, Insight filed a motion for an extension of time to amend its complaint the day before that deadline.[3]  Insight's motion for an extension noted that the parties were in the process of negotiating a protective order so that Insight could submit documents in certain Financial Industry Regulatory Authority ("FINRA") arbitration matters that were relevant to this action.  Insight argued it could not include those documents in an amended complaint without violating a confidentiality order until the parties agreed to a protective order, and so asked

---

[2] Intelligenics was dismissed from this appeal after it filed a motion for voluntary dismissal.

[3] Insight amended its initial motion for extension a day later after the district court denied the initial motion for failing to contain a pre-filing conference certification as required by the district court's local rules.

for an extension to amend until the parties could finalize the protective order.

The district court granted the motion in part, "but only to the extent any amendment is directly related to the documents or information that is subject to the contemplated protective order described in [Insight's] motion." The court stated that "[t]he deadline is not enlarged, however, should [Insight] seek to amend as to any other matter."

After the parties finalized the protective order, Insight moved to file a second amended complaint. The district court denied the motion without prejudice, noting it did not comply with its order granting in part Insight's extension request. The district court emphasized that "[t]he plaintiffs even acknowledge that at least some of their amended allegations were not, in fact, directly related to the documents and information subject to the parties' confidentiality agreement." Instead, Insight admitted it amended its pleadings "merely [in an] attempt to correct an alleged pleading deficiency" regarding damages. The district court therefore denied the motion without prejudice, giving Insight another chance to amend. But the district court ordered Insight to identify in its anticipated renewed motion what confidential documents related to each alteration in the complaint.

Insight filed its renewed motion for leave to amend. But the district court found that many of the proposed allegations—which asserted theories of gross negligence, conversion, and fraud—failed "to comply with the [c]ourt's order requiring specificity" and did

not identify "the particular language from the document that was subject to the confidentiality agreement upon which [Insight] claim[s] the new allegation is based" for any of its proposed changes in the amended complaint. Thus, the district court found Insight "fundamentally fail[ed] to carry [its] burden of establishing the good cause necessary to be excused from complying with the [c]ourt's amendment deadline." The district court therefore granted the renewed motion in part and denied it in part, only allowing amendments to the complaint that related to the confidential FINRA arbitration documents, consistent with its previous orders.

Ultimately, on May 5, 2021, Insight filed its second amended complaint, which asserted a one-count claim of negligence against Deutsche. Deutsche then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

The district court granted Deutsche's motion and dismissed Insight's complaint with prejudice, concluding that Insight had failed to establish Deutsche owed it a duty of care. Additionally, the district court found that Insight's complaint was devoid of factual allegations identifying the damages which it suffered in connection with its customers' losses, noting that Insight's allegations as to damages were "wholly conclusory and vague." This appeal ensued.

## II.    STANDARD OF REVIEW

21-12817                Opinion of the Court                9

We review the grant of a motion to dismiss *de novo*, and, in doing so, we accept the allegations in the complaint as true while construing them in the light most favorable to the plaintiff. *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1240 (11th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Stating a plausible claim for relief requires pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which means "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"We review the district court's denial of a motion for leave to amend the complaint for abuse of discretion." *Covenant Christian Ministries, Inc. v. City of Marietta*, 654 F.3d 1231, 1239 (11th Cir. 2011). This same standard of review applies to a district court's decision to enforce its pretrial order. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998). "Discretion means the district court has a 'range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006) (quoting *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005)).

## III.    ANALYSIS

On appeal, Insight argues that the district court erred for several reasons. First, Insight contends that the district court erred in granting the motion to dismiss because Insight had pleaded sufficient facts to demonstrate that Deutsche owed Insight a duty and that it was harmed by Deutsche's actions. Next, Insight argues the district court abused its discretion by limiting Insight's ability to amend its complaint beyond the deadline established by the scheduling order. Finally, Insight urges us to consider new theories of liability Insight advances against Deutsche for the first time on appeal. We address these arguments in turn.

## A.    Insight's Negligence Claim Fails: No Duty and No Harm

Under Florida law,[4] a plaintiff must establish four elements to plead a negligence claim: "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). The parties dispute whether Deutsche owed Insight a duty and whether Insight was harmed. Deutsche did not and Insight was not.

---

[4] In diversity jurisdiction cases, "[f]ederal courts adjudicating state law claims apply the substantive law of the state where they render decisions." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1059 (11th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Here, the applicable state law is Florida law.

"Establishing the existence of a duty under Florida's negligence law is a minimum threshold legal requirement that opens the courthouse doors." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012) (alterations adopted).  Florida law recognizes four sources of duties of care: "(1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case*." Dorsey v. Reider*, 139 So. 3d 860, 863 (Fla. 2014) (emphasis removed).

The Florida Supreme Court has held that "establishing the existence of a duty is primarily a legal question and requires demonstrating that the activity at issue created a general zone of foreseeable danger of harm to others." *Id.* at 863–64. "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *Id.* at 863 (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992)); *accord Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014). "[T]he proper inquiry for the reviewing appellate court is whether the defendant's conduct created a foreseeable zone of risk, *not* whether the defendant could foresee the specific injury that actually occurred." *Dorsey*, 139 So. 3d at 864 (emphasis in original) (quoting *McCain*, 593 So. 2d at 504).  Whether the alleged loss is economic or real is irrelevant outside the product liabilities context for purposes of determining the existence of a duty of care under Florida negligence law.  *See Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So.

3d 399, 401, 407 (Fla. 2013) (holding economic loss rule only applies in the products liability context); *Lamm*, 749 F.3d at 947 (recognizing *Tiara* to limit the economic loss rule to product liability cases).

Here, Insight has not shown that Deutsche owed it a duty of care. Insight argues that the source of the duty arises from the rules and regulations that govern the clearinghouse system that both Insight and Deutsche operate in, under which Deutsche either assumed a duty or formed a special relationship with Insight, as well as the facts of this case. Neither the law nor the facts create a duty here.

Many of Insight's duty arguments relate to Deutsche's participation in a securities clearinghouse system. We need not consider these arguments, as Insight raises them for the first time on appeal. *See CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1336 (11th Cir. 2017) ("A federal appellate court will not, as a general rule, consider an issue that is raised for the first time on appeal." (quoting *In re Pan Am. World Airways, Inc., Maternity Leave Pracs. & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1461–62 (11th Cir. 1990))).

But even if we did, such arguments would be unavailing. Both the Florida Supreme Court and this Court "have held that [depository institutions] generally have no duty to investigate transactions made by authorized agents of the account holder." *Lamm*, 749 F.3d at 948 n. 7. Haberer was an authorized agent of all the account holders involved in the transfers. Under Florida law, Deutsche generally has no duty to further investigate those

21-12817                Opinion of the Court                13

transactions. *See, e.g.*, *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012) ("Florida law does not require banking institutions to investigate transactions." (citing *Home Fed. Sav. & Loan Ass'n of Hollywood v. Emile*, 216 So. 2d 443, 446 (Fla. 1986))); *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir. 2003) (finding that banks have the "right to assume that individuals who have the legal authority to handle the entity's accounts do not misuse the entity's funds"). Florida law "generally accords" with the notion that "custodian banks [and depository banks] with no discretion to invest a customer's assets have no independent duty to supervise transactions on a customer's account or to ensure that assets held for the customer are marketable or in valid form." *Lamm*, 749 F.3d at 947–49 & n.7 ("In short, Mr. Lamm has failed to establish that State Street owed him an independent duty to monitor the investments on his account, verify their market value, or ensure they were in valid form.").

Contrary to Insight's argument, Deutsche did not assume a duty when it processed the transactions along with their general instructions. Absent an express promise, this act did not somehow create a duty to consider the impact of a securities transaction on the former broker/dealer that previously managed an account. *See O'Halloran v. First Union Nat'l Bank of Fla.*, 322 F. App'x 900, 902 (11th Cir. 2009) (holding that when a bank "did not explicitly promise [on another's behalf] that [it] would take any steps other than the ordinary duties owed to the owner of a general account" and its actions "were taken on its own behalf," the bank did not

voluntarily undertake a duty). Even if Deutsche did assume a duty by accepting the instructions, the duty would be to the holders of the securities, not to Insight, the broker/dealer that managed the accounts where the securities used to be.

Insight cites no case law supporting its argument that Deutsche had a special relationship with Insight that created a duty beyond a passing reference to *Pierre v. Jenne*, 795 So. 2d 1062 (Fla. Dist. Ct. App. 2001). But Insight fails to note that *Pierre* requires an express promise or assurance and justifiable reliance on that promise. *Id.* at 1063–64. Insight provides no evidence that Deutsche made such a promise. And the facts in this case do not give rise to a duty of care. The operative complaint does not indicate that Deutsche knew Insight was involved in the transfer order. Without this knowledge, Deutsche could not have foreseen Insight falling within the zone of risk.

But even if Deutsche was aware of Insight's involvement in the transactions. It is not clear how that would create a duty of care, particularly because the operative complaint is devoid of facts on this point. It goes too far to suggest that one financial institution with a customer's account owes a duty to another financial institution where that customer also holds an account or previously held an account.

Contrary to Insight's contentions, Insight did not just lose "millions of its customers' assets." Rather, the duly authorized agent of the accounts requested Insight transfer the funds to Deutsche. Insight complied with what appeared to be a legitimate

request and admits that it "was not the cause of the failure." Once those securities were out of Insight's custody, it could no longer be harmed by what happened to the securities now in Deutsche's control. Deutsche may have owed a duty to the securities owners, but not to Insight. As the district court concluded, there is nothing in the operative complaint to show that Deutsche should have foreseen Insight's, as opposed to Insight's customers,' losses. Without that, the factual allegations do not support a finding that Deutsche owed Insight a duty.

Insight's claim also fails because it has not pled factual allegations as to damages beyond the conclusory statements in the operative complaint that it suffered "damages." In dismissing the complaint, the district court provided a list of Insight's damages-related allegations, or lack thereof. For example, Insight asserted that Deutsche's conduct "ultimately damaged" Insight, that Deutsche's actions were "to the detriment of" Insight, and that Deutsche's negligence "caused Insight to incur damages." These vague, conclusory allegations of damages are not enough to survive a motion to dismiss. *See Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."). Even Insight acknowledges on appeal that the operative complaint had "little but vanilla allegations of just 'damages.'"

Insight's operative complaint failed to provide sufficient factual allegations to show that Deutsche owed Insight a duty of care

or that Insight was damaged by Deutsche's actions. Without establishing those two elements, Insight cannot state a plausible negligence claim.

### B.    The District Court Did Not Abuse Its Discretion

Insight argues that its proposed amended complaint would have remedied many of the problems we identified above with the operative complaint, but the district court limited Insight's ability to amend its complaint. Insight's arguments on this point are equally unavailing. The district court was within its discretion to partially deny Insight's request for an extension and to partially deny the motion to amend the complaint.

Federal Rule of Civil Procedure 16(b)(1) requires that a district court judge "must issue a scheduling order" in cases before it, with limited exceptions not applicable here. A district court's "scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Once a district court issues its scheduling order, the order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Where a party seeks a modification of the scheduling order or seeks leave to amend the complaint after the deadline in the scheduling order has passed, it must satisfy Rule 16's good cause requirement, rather than the more lenient "when justice so requires" standard under Federal Rule of Civil Procedure 15. *See Sosa*, 133 F.3d at 1418–19.

The "good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Id.*(quoting Fed. R. Civ. P. 16 advisory committee's note). This Court has considered the diligence of the party seeking leave to amend as a factor in the good cause analysis. *See, e.g.*, *Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008); *Sosa*, 133 F.3d at 1419. Determining a party's diligence is a fact intensive analysis, and this Court has considered the month-long pendency of a motion for summary judgment before the filing of the motion to amend, *see Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1367 (11th Cir. 2007), and the fact that the information providing the basis for the proposed amendment was available to the party before the deadline, *see id.*; *Sosa*, 133 F.3d at 1419, as relevant to a party's diligence.

Ultimately, a district court has significant discretion in setting and enforcing its scheduling orders. "[W]e have often held that a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011) ("[T]hough the court had the authority to grant a *post hoc* extension of the discovery deadline for good cause, it was under no obligation to do so."); *see also Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1348–49 (11th Cir. 2004) (upholding a district court's decision to exclude an expert report disclosed after the deadline expired for submission).

Here, Insight confuses the applicable standard, arguing that the district court should have applied a "less rigid, less extreme" version of the good cause standard, since the deadline to amend had not passed before Insight asked for the extension. But the standard to amend a scheduling order is for good cause regardless of when a party seeks the amendment, *see Sosa*, 133 F.3d at 1418, as Insight admits on the same page of its brief. Regardless, in essence Insight is arguing that the district court abused its discretion in denying the motion for extension because Insight showed good cause for seeking the extension. It did not.

Insight may believe that the extension request "would not have moved the needle" or otherwise impacted the case's schedule, but the district court disagreed, as was its prerogative. *See Josendis*, 662 F.3d at 1307. The district court granted the motion for an extension—which Insight filed one day before the deadline expired—to the extent it related to subject matter covered by the protective order, as that was the one rationale Insight advanced to show it had good cause for the extension request. But the district court was under no obligation to grant that request. *See id.* Indeed, a district court has significant discretion in its management of the cases on its docket. *See id.*; *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) ("We recognize that district courts enjoy broad discretion in deciding how best to manage the cases before them.").

Lastly, Insight equates the district court's decision as a sanction. It was not. The district court did not "sanction" Insight; it

used its discretion to grant what it believed to be a reasonable modification to its scheduling order based on the evidence of good cause Insight presented in its motion and the district court had every right to do so (and to not grant further modification of the scheduling order) under Rule 16(b)(4).

## C.    Insight Waived Its New Arguments

Finally, on appeal Insight advances new claims that the district court did not consider. Specifically, Insight now argues Deutsche is liable under theories of common law indemnification, contribution, breach of fiduciary duty, and breach of contract. Despite these theories being raised for the first time on appeal, Insight argues that we should still consider them. We decline to do so.

As a general rule, we do not consider issues raised for the first time on appeal as these issues are not properly preserved for our review. *CSX Transp.*, 846 F.3d at 1336; *Access Now Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (collecting cases). Rather, the party seeking to raise the issue must first present it to the district court in a manner that allows the court "an opportunity to recognize and rule on it," and then the party may properly present it to this Court on appeal. *CSX Transp.*, 846 F.3d at 1336–37 (quoting *In re Pan Am.*, 905 F.2d at 1462). We adhere to this rule for good reason: "as a court of appeals, we review claims of judicial error in the trial courts," and "[i]f we were to regularly address questions . . . that district[] court[s] never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court."

*Access Now*, 385 F.3d at 1331.  And while we may consider arguments raised for the first time on appeal in certain exceptional circumstances, *see id.* at 1332, Insight has failed to show that any of those exceptional circumstances apply here.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's order dismissing Insight's complaint.

**AFFIRMED.**