[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12095
_____

D.C. Docket No. 1:14-cv-00201-TWT

CSX TRANSPORTATION, INC.,

Plaintiff - Appellant,

versus

GENERAL MILLS, INC.,

Defendant - Appellee.

_____

No. 15-14399
_____

D.C. Docket No.  1:14-cv-00201-TWT

CSX TRANSPORTATION, INC.,

Plaintiff - Appellant,

versus

GENERAL MILLS, INC.

Defendant - Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(January 30, 2017)

Before WILLIAM PRYOR, and ROSENBAUM, Circuit Judges, and
MARTINEZ,[*] District Judge.

WILLIAM PRYOR, Circuit Judge:

Our caselaw contains discordant answers to the question whether federal

common law borrows the doctrine of collateral estoppel as defined by state law,

*Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1310 (11th Cir.

2005), or applies the doctrine only as defined by federal law, *Tampa Bay Water v.*

*HDR Engineering, Inc.*, 731 F.3d 1171, 1179 (11th Cir. 2013), to determine the

preclusive effect of an earlier judgment of a federal court that exercised diversity

jurisdiction. This appeal requires that we resolve that discord. In an earlier action

before a federal court that exercised diversity jurisdiction, a jury found CSX

Transportation solely liable for injuries suffered by an employee of General Mills

and awarded the employee damages. CSX filed this action for indemnification

from General Mills. The district court dismissed this action on the ground that a

contract between the parties barred indemnification for damages "arising from

[CSX's] . . . sole negligence." To reach this result, the district court applied a

_____

[*]Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida,
sitting by designation.

federal rule of collateral estoppel to bar relitigation of the relative fault of General Mills for the injury suffered by its employee. We reverse and remand because federal common law adopts the state rule of collateral estoppel to determine the preclusive effect of a judgment of a federal court that exercised diversity jurisdiction.

## I.    BACKGROUND

In 1989, CSX Transportation and General Mills entered into a Sidetrack Agreement for the construction, use, and maintenance of a sidetrack railway line. The sidetrack subject to the agreement is a "spur track"; it provides railway access from a rail line operated by CSX to a processing facility owned by General Mills. The Sidetrack Agreement grants General Mills the right to conduct "switching" on the sidetrack. Switching is "the process of moving railcars that have been previously delivered by a train . . . in the proper order so that they can be coupled to a locomotive and pulled out of a customer's facility." To conduct switching, General Mills acquired a trackmobile, a "mobile railcar mover, capable of traveling on both roads and railroad tracks, fitted with couplers for moving small numbers of railcars."

Section 15 of the Sidetrack Agreement contains a specific liability provision for switching. In consideration for the use of the sidetrack, General Mills assumed "*all* risk of loss, damage, cost, liability, judgment and expense . . . in connection

3

with *any* personal injury to or death of any persons, or loss of or damage to any property, . . . that may be sustained or incurred in connection with, . . . the operation of [General Mills's] trackmobile or locomotive power." The Sidetrack Agreement also contains a general liability provision, Section 11, that relieves General Mills of liability "for all losses arising from [CSX's] . . . sole negligence."

On June 5, 2005, two employees of General Mills, Doug Burchfield and Rodney Turk, were switching railcars on the sidetrack. Turk moved a railcar to a holding track with the trackmobile. The railcar, which Turk did not properly secure, rolled down the track, collided with two other railcars, and hit Burchfield who suffered serious injuries.

Burchfield filed a complaint against CSX for his injuries and invoked the diversity jurisdiction of the district court. *Burchfield v. CSX Transp., Inc.*, No. 107-CV-1263, at *9 n.1 (N.D. Ga. May 15, 2009). Before trial, the district court granted Burchfield's motion for a partial summary judgment against the defense of CSX that General Mills was at fault for the accident. CSX prevailed at trial, but on appeal we reversed on evidentiary grounds and remanded. *Burchfield v. CSX Transp., Inc.*, 636 F.3d 1330, 1338 (11th Cir. 2011). At the retrial, a jury found CSX solely at fault and awarded Burchfield more than $20 million in damages. The parties later settled the claim for $16 million.

4

CSX then requested indemnification from General Mills. General Mills denied the request, and CSX filed this suit. The complaint alleged that the Sidetrack Agreement requires General Mills to indemnify CSX. General Mills moved to dismiss the complaint on the ground that the Sidetrack Agreement does not require indemnification because the jury found CSX solely at fault for Burchfield's injuries and collateral estoppel prohibits relitigation of the fault of General Mills. The district court dismissed the complaint.

CSX filed a motion for reconsideration or, in the alternative, leave to file an amended complaint, in which it argued that the district court erred because it applied collateral estoppel as defined by federal law, not state law. According to CSX, had the district court applied collateral estoppel as defined by the law of Georgia, CSX would have been permitted to relitigate the relative fault of General Mills. Unlike the federal rule of collateral estoppel, collateral estoppel as defined by Georgia law requires the earlier judgment to have been rendered in litigation between identical parties or their privies. *Compare Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979), *with ALR Oglethorpe, LLC v. Henderson*, 783 S.E.2d 187, 192 (Ga. Ct. App. 2016). The district court initially granted the motion to file an amended complaint, but on reconsideration later denied it.

## II.    STANDARDS OF REVIEW

"We review *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (quoting *Cinotto v. Delta Air Lines Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012)). We review whether the doctrine of collateral estoppel is available *de novo*. *Dailide v. U.S. Att'y Gen.*, 387 F.3d 1335, 1341 (11th Cir. 2004).

## III.    DISCUSSION

Before we address the merits, we must first determine whether CSX preserved this issue for appeal. "A federal appellate court will not, as a general rule, consider an issue that is raised for the first time on appeal." *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1461–62 (11th Cir. 1990). "[I]f a party hopes to preserve a[n] . . . argument, . . . [it] must first clearly present it to the district court . . . in such a way as to afford the district court an opportunity to recognize and rule on it." *Id.* at 1462.

CSX argues, and we agree, that it preserved its argument that federal common law adopts the state rule of collateral estoppel to determine the preclusive effect of an earlier judgment of a federal court that exercised diversity jurisdiction.

6

In footnote four of the brief CSX filed in response to the motion to dismiss of General Mills, CSX argued that our precedent bound the district court to apply collateral estoppel as defined by federal law, but that this precedent was wrong because state law should apply. Although CSX went on to argue in the same brief that collateral estoppel as defined by federal law did not bar relitigation of the negligence of General Mills, the footnote presented a full argument. It cited relevant authority and reasoned by syllogism. That the argument appeared in a footnote does not affect our conclusion. *Cf. United States Sec. Exch. Comm'n v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 812 (11th Cir. 2015) ("The defendants' fleeting footnote explaining in one sentence that such evidence 'could be relevant' is insufficient to properly assert a claim on appeal."). And in any event, the appropriate federal common law rule of collateral estoppel is a "pure question of law" that we "will consider" for the first time on appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331–32 (11th Cir. 2004) (quoting *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1342 (11th Cir. 2001)).

Whether federal common law borrows the state rule of collateral estoppel to determine the preclusive effect of a judgment rendered by a court that exercised diversity jurisdiction is unclear under our caselaw. *Compare CSX Transportation, Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309, 1316 (11th Cir. 2003) ("We now hold that federal preclusion principles apply to prior federal

decisions, whether previously decided in diversity or federal question jurisdiction."), *and Tampa Bay Water*, 731 F.3d at 1180 (applying "*federal* collateral estoppel law to determine the preclusive effect" of a summary judgment granted by a district court sitting in diversity jurisdiction (emphasis added)), *with SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1336 (11th Cir. 2014) ("Under *Semtek*, federal common law generally incorporates state law to determine the preclusive effect of a federal diversity judgment."), *and Palmer & Cay*, 404 F.3d at 1309–10 (applying the *state* law of collateral estoppel to determine the preclusive effect of a declaratory judgment rendered by a federal court sitting in diversity jurisdiction). Because we must not "speak[] from both sides of [our] mouth," Bryan A. Garner, *et al.*, *The Law of Judicial Precedent* 300 (2016), we must resolve this uncertainty and determine which of our precedents binds us.

Some of the confusion in our caselaw is explained on the ground that the answer to the question before us is, as stated, one of federal common law. *Palmer & Cay*, 404 F.3d at 1310 (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 509 (2001)). That is, regardless of whether we incorporate collateral estoppel as defined by state law or apply a federal rule, we apply *federal* common law. *Cf. Semtek*, 531 U.S. at 508. That federal common law determines the preclusive effect of an earlier judgment against a party, even if federal common

8

law borrows the state rule, has likely caused confusion in our decisions. Our decisions, for example, contain imprecise statements such as "federal preclusion principles apply," *Brotherhood*, 327 F.3d at 1316; *see also Tampa Bay Water*, 731 F.3d at 1179.

In *Semtek International, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), the Supreme Court addressed the related question, whether federal common law adopts the state rule of res judicata to determine the preclusive effect of an earlier judgment of a federal court that exercised diversity jurisdiction. *Id.* at 499. The Supreme Court applied federal common law and held that the "claim-preclusive effect" of the judgment of a federal court that exercised diversity jurisdiction is determined by "the law that would be applied by state courts in the State in which the federal diversity court sits." *Id.* at 508 (citations omitted). The Supreme Court explained that "[t]his is . . . a classic case for adopting, as the federally prescribed rule of decision," state law, because "state, rather than federal, substantive law is at issue . . . [a]nd indeed, nationwide uniformity in the substance of the matter is better served by having the same claim-preclusive rule (the state rule) apply whether the dismissal has been ordered by a state or a federal court." *Id.* (citations omitted).

If we were deciding the question presented for the first time in our Circuit, the reasoning of *Semtek* would likely compel our conclusion. The doctrines of

9

collateral estoppel and res judicata are insufficiently distinct to warrant different treatment under the rationale of *Semtek*. But we do not address this question in the first instance, and the holding of *Semtek* does not reach the precise question before us—the appropriate rule of collateral estoppel or issue preclusion.

Our precedents after *Semtek* contain contradictory and confusing answers to the question presented so we apply two principles to parse our jumbled caselaw. First, we distinguish between the holding and dicta of a decision. "The holding of an appellate court constitutes the precedent, as a point necessarily decided. Dicta do not: they are merely remarks made in the course of a decision but not essential to the reasoning behind that decision." Garner, *et al.*, *supra* at 44 (emphasis omitted); *accord United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009). Second, we are bound to follow an earlier holding "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). But, "[w]hen we have conflicting [precedents], we follow our oldest precedent." *United States v. Madden*, 733 F.3d 1314, 1319 (11th Cir. 2013) (citation omitted); *see also Walker v. Mortham*, 158 F.3d 1177, 1188 (11th Cir. 1998) (adopting the "earliest case rule" for intracircuit splits); *accord* Garner, *et al.*, *supra*, at 303 ("With an intermediate appellate court, an earlier horizontal precedent nearly always rules.").

10

Our first precedent after *Semtek* to mention the question presented is *Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309. General Mills relies on the following statement in that decision: "We now hold that federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction." *Id.* at 1316 (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 393 n.6 (5th Cir. 1998) ("[F]ederal law of issue preclusion applied because the prior decision had been issued by a federal court, albeit in a diversity action.")). At first blush, our statement appears to support the position of General Mills that federal common law incorporates collateral estoppel as defined by federal law to bar relitigation of the issue in this appeal, whether General Mills caused Burchfield's injuries. Notably, when we made this statement, we did not mention *Semtek*, which the Supreme Court had decided only two years before we decided *Brotherhood*.

Even if we assume that *Brotherhood* stated a rule about collateral estoppel and an earlier federal judgment where the court exercised diversity jurisdiction, that rule has no precedential effect because it was not part of our holding. That is, the rule does not bind us. The question in *Brotherhood* was the preclusive effect of "a federal question previously decided by a federal court," not a question of state law decided by a federal court that exercised diversity jurisdiction. *Id.* Whether federal common law incorporates collateral estoppel as defined by state or federal

11

law to apply to earlier judgments of federal courts that exercised diversity jurisdiction was unnecessary "as a justification for the decision reached." Garner, *et al.*, *supra*, at 46.

In contrast with the dicta from *Brotherhood*, a later decision, *Palmer & Cay*, 404 F.3d 1297, squarely presented the issue whether federal common law incorporates collateral estoppel as defined by state law to determine the preclusive effect of an issue previously decided by a federal court that exercised diversity jurisdiction. *Id.* at 1310. *Palmer & Cay* required us to determine whether a district court that exercised diversity jurisdiction erred when it limited the preclusive effect of a declaratory judgment to the State of Georgia. *Id.* at 1309. We rejected the geographic limitation imposed by the district court. Without any mention of the dicta from *Brotherhood*, we based our decision on *Semtek* and concluded that a court asked to enforce the declaratory judgment must apply federal common law, which in turn borrows the state rule where the district court exercised diversity jurisdiction, and the district court failed to follow this approach. *Id.* at 1310 (citing *Semtek*, 531 U.S. at 509). Unlike the rule announced in *Brotherhood*, our conclusion that federal common law incorporates collateral estoppel as defined by state law was part of our holding in *Palmer & Cay*. It was a "ruling on a point of law" that was necessary to our decision. Garner, *et al.*, *supra*, at 46.

12

To complicate matters further, in *Tampa Bay Water*, which we decided after *Palmer & Cay*, we held the opposite. We cited *Brotherhood* for the proposition that federal common law incorporates collateral estoppel as defined by federal law to determine the preclusive effect of issues decided by a federal court that exercised diversity jurisdiction, and we applied that rule. *Tampa Bay Water*, 731 F.3d at 1179–80 (citing *Brotherhood*, 327 F.3d at 1316). Our application of the rule announced in *Brotherhood* was part of our holding in *Tampa Bay Water* because we applied collateral estoppel as defined by federal law to the earlier judgment of a federal court that exercised diversity jurisdiction. *Id.* at 1180–81. But in *Tampa Bay Water*, we did not discuss *Semtek*, nor did we mention our precedent in *Palmer & Cay*. And we did not discuss the possibility that federal common law could borrow the state rule of collateral estoppel to determine the preclusive effect of an earlier federal judgment when the district court exercised diversity jurisdiction.

In sum, our caselaw contains two lines of divergent precedent, neither of which acknowledges the other. One of those lines of precedent, *Brotherhood* and *Tampa Bay*, fails to mention *Semtek*, a Supreme Court precedent, and instead sows confusing dicta into our analysis. *Brotherhood*, 327 F.3d at 1316 ("We now hold that federal preclusion principles apply to prior federal decisions . . . previously decided in diversity . . . jurisdiction."). But, precisely because that confusing

13

statement was dicta, the true conflict in our precedent is between *Palmer & Cay* and *Tampa Bay Water*. *Palmer & Cay* holds that federal common law borrows the *state* rule of collateral estoppel to determine the preclusive effect of issues decided by a federal court that exercised diversity jurisdiction, 404 F.3d at 1310, and *Tampa Bay Water* holds the opposite—that federal common law applies the *federal* rule to resolve the same question, 731 F.3d at 1180.

Under the earliest precedent rule, *see Madden*, 733 F.3d at 1319, *Palmer & Cay* binds us in this and future appeals because we decided it before we decided *Tampa Bay Water*. And we cannot reconcile our holdings in *Palmer & Cay* and *Tampa Bay Water*, which "[i]f at all possible" we should do, *see* Garner, *et al.*, *supra*, at 300, because they announced incompatible rules. We hold that federal common law borrows the state rule of collateral estoppel to determine the preclusive effect of a federal judgment where the court exercised diversity jurisdiction.

The parties dispute one element of collateral estoppel as defined by Georgia law: that the earlier litigation must have been between identical parties. Unlike the federal rule of collateral estoppel, which allows non-parties to the previous action to assert the doctrine offensively or defensively, *Parklane*, 439 U.S. at 327, *Collins v. Seaboard Coastline R.R. Co.*, 681 F.2d 1333, 1334 (11th Cir. 1982), a party who asserts collateral estoppel as defined by Georgia law must prove that the issue

14

decided in earlier litigation was "between identical parties," *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1264 (11th Cir. 2011). The identity requirement includes parties and their privies, *Oglethorpe*, 783 S.E.2d at 192. General Mills argues that it was in privity with Burchfield in the underlying litigation, which necessarily defeats the claim for indemnification. CSX counters that Burchfield and General Mills did not have the same interest in the underlying litigation and were not privies.

We decline to decide this dispute. Whether parties were in privity is a factual question that should be decided in the first instance by the district court. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 233 (1991) (explaining that the "institutional advantage[]" of a district court is its "unchallenged superiority . . . [in] factfinding"); *Hart v. Yamaha-Parts Distribs., Inc.*, 787 F.2d 1468, 1472 (11th Cir. 1986) ("[P]rivity . . . is a factual question which should not be reversed unless its determination is clearly erroneous."). We remand for the district court to determine whether collateral estoppel bars the complaint of CSX for indemnification.

We also decline to decide the alternative argument raised by CSX, whether the Sidetrack Agreement requires indemnification assuming CSX was solely at fault. The district court, as CSX argues, construed the Sidetrack Agreement under the premise that collateral estoppel as defined by federal law precludes relitigation of the negligence of General Mills. The district court should have the first

15

opportunity to decide the predicate question of privity, so we do not resolve this alternative argument.

## IV.    CONCLUSION

We **REVERSE** and **REMAND** for proceedings consistent with this opinion.

16