[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-15276
_____

D.C. Docket No. 2:15-cv-00957-KOB

RONALD SELLERS,
As assignee of Gary Gardner & Gary Gardner Builders, Inc.,

Plaintiff-Appellee,

versus

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,

Defendant-Appellant,

STEVE DURHAM,
d.b.a. S. Durham Contracting,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(August 7, 2020)

Before WILSON, LAGOA, and ANDERSON, Circuit Judges.

LAGOA, Circuit Judge:

Ronald Sellers wanted a new home, so he hired Gardner Builders, Inc., to build it for him. Shortly after Sellers moved into the new home, construction defects began to appear. Three lawsuits later—involving one state court action and two separate federal actions—this appeal asks this Court to determine the preclusive effect of a judgment entered by a federal court exercising diversity jurisdiction on a nonparty to that earlier federal action.

Nationwide Mutual Fire Insurance Co. ("Nationwide") appeals both the district court's order denying Nationwide's motion in limine and the final judgment entered in favor of Ronald Sellers, as assignee of Gary Gardner and Gary Gardner Builders, Inc. ("Sellers/Gardner"). In its motion in limine, Nationwide sought to bar Sellers/Gardner from presenting evidence of when damages to Ronald Sellers's ("Sellers") home manifested based on the doctrine of issue preclusion. Nationwide argued that the issue had already been decided in an earlier federal court declaratory judgment action in which the federal court exercised diversity jurisdiction. When determining the preclusive effect of an earlier judgment rendered by a federal court exercising diversity jurisdiction, federal common law adopts the rules of issue preclusion applied by the State in which the rendering court sits. In this case, the district court was required to apply Alabama's rules of issue preclusion. Because

the district court instead applied a federal rule of issue preclusion and that federal rule is not substantively similar to Alabama's rule on nonparty issue preclusion, we reverse the district court's order denying Nationwide's motion in limine, vacate the final judgment in favor of Ronald Sellers, as assignee of Sellers/Gardner, and remand for further proceedings.

## I.    FACTUAL AND PROCEDURAL HISTORY

As noted above, this appeal involves the application of nonparty issue preclusion within the context of three proceedings—a consent judgment obtained in an action brought in an Alabama state court (the "state court case"); a federal declaratory judgment action rendered in an Alabama district court exercising diversity jurisdiction (the "declaratory judgment action"); and the instant case, brought under Alabama's "direct action" statute, Alabama Code section 27-23-2, in an Alabama district court (the "direct action").  The relevant factual and procedural history of the three cases is as follows.

On August 17, 2004, Sellers entered into a contract with Gary Gardner and Gardner Builders, Inc.[1] (collectively, "Gardner") for the construction of a home. Gardner hired subcontractor Steve Durham d/b/a S. Durham Contracting ("Durham") to perform footing and foundation work on the home.  Sellers moved

---

[1] Although the instant case was styled as "Gary Gardner Builders, Inc.," there is no dispute that "Gardner Builders, Inc." is the same entity.

3

into the home on June 29, 2005, and soon began noticing construction defects with the home.  Relevant to this appeal, Nationwide issued a contractors policy of insurance, policy no. 77 AC 843-676-3001 (the "policy"), to Durham with a policy period from December 20, 2006, to December 20, 2007.

In the state court case, Sellers filed suit against Gardner and Durham in the Circuit Court of Jefferson County, Alabama, in 2008.  On August 19, 2009, Gardner Builders, Inc., filed a cross complaint against Durham alleging that if it was found liable for the injuries alleged in Sellers's complaint, then Durham was responsible for the damages.[2]  Sellers and Gardner subsequently entered into a settlement agreement and assignment in October 2011.  In the assignment, Sellers agreed to release all claims against Gardner in exchange for $100,000 and Gardner's assignment to Sellers of any and all claims or causes of action Gardner had, or may have, to recover against Durham.  The following month, Sellers/Gardner filed an amended cross complaint against Durham.

On July 15, 2011, while the state court case was pending, Nationwide filed a declaratory judgment action against Durham (its insured) and Sellers in the United States District Court for the Northern District of Alabama.  Relevant here, the district court exercised diversity jurisdiction in the declaratory judgment action.  Nationwide

---

[2] Steve Durham filed a petition for bankruptcy on July 2, 2010, and was discharged from bankruptcy on October 8, 2010.

4

sought a determination of its obligation to defend and indemnify Durham for Sellers's claims in the state court case.  Specifically, Nationwide argued that the causes of action and damages alleged by Sellers were not covered under the terms of the policy for several reasons: 1) the allegations did not constitute an "occurrence" under the policy; 2) the damages arose before the inception of the policy, which was effective December 20, 2006, to December 20, 2007; 3) multiple exclusions applied; and 4) the policy did not afford coverage for economic damages.  Nationwide filed a motion for summary judgment, and Sellers filed a response to Nationwide's motion.

On August 6, 2012, the magistrate judge entered a report and recommendation in the declaratory judgment action recommending that the district court grant Nationwide's motion for summary judgment against Sellers because, among other reasons, the damages to Sellers's home allegedly caused by Durham's faulty work manifested in April 2006, prior to the inception of Nationwide's policy period.  On August 27, 2012, the district court adopted the report and recommendation and entered a final judgment providing that "Nationwide . . . has no obligation to defend or indemnify either of the defendants with reference to the subject matter of this action."

After the district court entered final judgment in Nationwide's favor in the declaratory judgment action, Sellers/Gardner and Durham entered into a consent

5

judgment in the state court case in October 2013. The consent judgment provided that "judgment is entered in favor of Plaintiff Ronald Sellers, individually and as assignee of Gary Gardner and Gardner Builders (Plaintiff) and against Steve Durham, individually and doing business as S. Durham Contracting (Defendant) in the total amount of $250,000."

On May 12, 2015, Sellers/Gardner filed the instant direct action against Nationwide and Durham pursuant to Alabama Code section 27-23-2, Alabama's "direct action" statute, seeking to hold Nationwide liable for the consent judgment entered in favor of Sellers/Gardner and against Durham in the state court case. Nationwide filed an answer denying that it was under any obligation to satisfy the consent judgment and asserting affirmative defenses, including a second affirmative defense of estoppel, res judicata, collateral estoppel, claim preclusion, issue preclusion, and law of the case.

Before trial, Nationwide filed a motion in limine seeking to preclude Sellers/Gardner from introducing evidence that the effects of Durham's defective work manifested sometime after April 2006. Specifically, Nationwide argued that "the issue of *when* Durham's defective work caused resulting damages has already been litigated" to judgment between the "same parties" in the declaratory judgment action. Sellers/Gardner also filed a motion in limine seeking to preclude Nationwide from offering any evidence regarding the declaratory judgment action.

6

The matter proceeded to trial on September 10, 2018. Prior to selecting a jury, the district court granted Sellers/Gardner's motion in limine and denied without prejudice Nationwide's motion in limine. The trial concluded the next day, and the jury rendered a verdict in Sellers/Gardner's favor. In a special verdict form, the jury found that "Durham's faulty workmanship caused property damage to parts of Mr. Sellers' home, other than to the footings themselves," and that "the property damage caused by Mr. Durham's work manifest[ed] between December 20, 2006, and December 20, 2007."

After the verdict, the district court requested that Nationwide file a motion to reconsider its motion in limine. On September 19, 2018, Nationwide filed its motion to reconsider. Nationwide argued that the district court erred by denying its motion in limine because the issue of whether the damages to Sellers's home manifested during the policy period was previously litigated in the declaratory judgment action and decided in Nationwide's favor. Nationwide asserted that issue preclusion applied even though Gardner did not participate in the declaratory judgment action because the assignment between Sellers and Gardner in the state court case established "complete privity" between them in the declaratory judgment action. Sellers/Gardner filed a response to Nationwide's motion to reconsider arguing, in part, that while issue preclusion bars an assignee from relitigating an issue that the

7

assignor litigated in a prior case, here, Gardner was the assignor, not the assignee, and issue preclusion therefore did not apply.

On November 28, 2018, the district court issued its memorandum opinion denying Nationwide's motion in limine.  In addressing Nationwide's issue preclusion argument, the district court held that federal rules of issue preclusion applied:

> In issue preclusion, the court applies the preclusion law of the same legal system that determined the underlying case.  *See CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1316 (11th Cir. 2003).  Because the underlying case here was decided in federal district court, federal preclusion law applies.

The district court focused its analysis on whether the party to be precluded, i.e., Gardner, had a full and fair opportunity to litigate the issue in the declaratory judgment action and assumed, without deciding, that the same issue was raised, actually litigated, and essential to the judgment reached in the declaratory judgment action.  The district court found that "privity did not exist in the proper configuration between the parties during the original declaratory judgment litigation."

That same day, the district court entered an order granting the motion to reconsider but denying the motion in limine.  Subsequently, on February 6, 2019, the district court entered final judgment in favor of Sellers/Gardner and against Nationwide in the amount of $250,000.  This appeal ensued.

8

## II.    STANDARD OF REVIEW

"Orders denying motions in limine are reviewed for abuse of discretion." *Luxottica Grp., S.p.A. v. Airport Mini Mall*, *LLC*, 932 F.3d 1303, 1311 (11th Cir. 2019). "Under that standard, we will reverse a district court's ruling 'only if the court applie[d] an incorrect legal standard, follow[ed] improper procedures in making the determination, or ma[d]e[ ] findings of fact that are clearly erroneous.'" *Id.* (alterations in original) (quoting *Kropilak v. 21st Century Ins. Co.*, 806 F.3d 1062, 1067 (11th Cir. 2015)). "A court applies the wrong legal standard when it analyzes evidence under the wrong test or applies a test to evidence that the test should not apply to." *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1068 (11th Cir. 2014). This Court reviews a district court's ruling on issue preclusion, also known as collateral estoppel,[3] under a *de novo* standard of review. *Lops v. Lops*, 140 F.3d 927, 937 n.10 (11th Cir. 1998).

## III.    ANALYSIS

"Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742,

---

[3] The terms "issue preclusion" and "collateral estoppel" have the same meaning. The use of the term "issue preclusion," however, has become prevalent in recent caselaw as it creates less confusion regarding its application. *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008).

9

748 (2001)). "A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." *Id.* Thus, there is a general rule against the application of issue preclusion to nonparties to the prior litigation. *Id.* at 892–93. Although there are various exceptions to the general rule against nonparty preclusion, *see, e.g.*, *id.* at 893–95, for the purposes of our discussion, Alabama law provides for the application of issue preclusion where a nonparty was in privity with a party to the prior action, *Leon C. Baker, P.C. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 821 So. 2d 158, 165–66 (Ala. 2001).

On appeal, Nationwide argues that the district court erred in denying its motion in limine because Gardner's assignment to Sellers in the state court case established privity between Sellers and Sellers/Gardner such that the general bar against nonparty issue preclusion does not apply. Specifically, Nationwide contends that the district court failed to consider the assignment within the context of Alabama's "expansive definition of privity, which includes not only a successive interest to the same property right, but also 'an identity of interest in the subject matter of litigation,'" when it denied Nationwide's motion in limine. *Wood v. Kesler*, 323 F.3d 872, 880 n.10 (11th Cir. 2003) (quoting *Leon C. Baker, P.C.*, 821 So. 2d at 165). In response, Sellers/Gardner argues that Alabama's rules of privity do not apply and cites to this Court's opinion in *CSX Transportation, Inc. v.*

10

*Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309 (11th Cir. 2003), which the district court relied on in denying the motion in limine.

In *Brotherhood of Maintenance of Way Employees*, this Court applied federal rules of issue preclusion to a judgment entered by a federal court exercising federal question jurisdiction and stated that "[w]e now hold that federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction." *Id.* at 1316.  Subsequently, however, this Court decided *CSX Transportation, Inc. v. General Mills, Inc.*, 846 F.3d 1333 (11th Cir. 2017), in which this Court stated that while "federal common law determines the preclusive effect of an earlier judgment against a party," in applying federal common law, we must "adopt[] the state rule of collateral estoppel to determine the preclusive effect of a judgment of a federal court that exercised diversity jurisdiction."  *Id.* at 1335, 1337.  In reconciling divergent precedent from this Court on the issue, we held "that federal common law borrows the state rule of collateral estoppel to determine the preclusive effect of a federal judgment where the court exercised diversity jurisdiction."  *Id.* at 1340; *see also Taylor*, 553 U.S. at 891 n.4 ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits.").  We also specifically found that the statement in *Brotherhood of Maintenance of Way Employees* that "federal preclusion principles apply to prior federal decisions . . . previously decided in diversity," 327 F.3d at

1316, was dicta with no precedential effect as it was unnecessary to justify the decision reached in that case. *Gen. Mills, Inc.*, 846 F.3d at 1338–39.

An action under the Declaratory Judgment Act, "does not, of itself, confer jurisdiction upon the federal courts"; therefore, "a suit brought under the Act must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question." *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989). Because the district court in the prior declaratory judgment action exercised diversity jurisdiction, the district court here was required to determine the preclusive effect of that earlier federal judgment based on the rules of issue preclusion from the State in which the rendering court sat—in this case, Alabama. Thus, the district court erred here when it failed to do so.

Our determination that the district court erred in failing to apply Alabama's rule of issue preclusion, however, does not end our analysis. We must also determine whether the district court nonetheless may have applied the correct legal standard if the rules of issue preclusion are substantively the same under Alabama law and federal law such that the holding would remain the same. *Cf. SFM Holdings, Ltd. v. Banc of Am. Sec. LLC*, 764 F.3d 1327, 1337 (11th Cir. 2014) (stating that the Court did not need to resolve whether federal or Florida rules of preclusion applied because "[a] comparison between Florida rules and federal rules governing claim and issue preclusion reveals that the relevant principles are largely identical").

12

A review of the relevant case law demonstrates that the Alabama rules of nonparty issue preclusion—specifically, the application of privity to justify nonparty issue preclusion—are not substantively the same as the federal rules of nonparty issue preclusion. Under Alabama law, "[t]he elements of [issue preclusion] are: (1) an issue identical to the one litigated in the prior suit; (2) that the issue was actually litigated in the prior suit; (3) that resolution of the issue was necessary to the prior judgment; and (4) the same parties." *Stinnett v. Kennedy*, 232 So. 3d 202, 220 (Ala. 2016) (quoting *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 726 (Ala. 1990)). The "same parties" requirement, however, is not "strictly enforced if the party raising the defense of [issue preclusion], or the party against whom it is asserted, is in privity with a party to the prior action." *Dairyland Ins. Co.*, 566 So. 2d at 726. Therefore, although not a party to the prior suit, under Alabama law, a person in privity with a party to the previous litigation may be precluded from relitigating the same issue. *See Malfatti v. Bank of Am., N.A.*, 99 So. 3d 1221, 1225 (Ala. 2012) ("For a prior judgment as to an issue to have a preclusive effect on a party's later relitigation of that issue, it must be shown that the person against whom the preclusive effect is sought, or a person in privity with that person, was a party to the prior litigation in which the issue was decided and that the issue for which preclusion is sought was actually litigated in the prior action." (quoting *McDaniel v. Harleysville Mut. Ins. Co.*, 84 So. 3d 106, 111–12 (Ala. Civ. App. 2011))).

13

Under Alabama law, "[t]he test for determining if two parties are in privity focuses on identity of interest" and this "reliance on the identity-of-interest test for determining the existence of privity extends at least as far back as 1853." *Dairyland Ins. Co.*, 566 So. 2d at 726 (citations omitted)) "The term 'privity' has not been uniformly defined with respect to [issue preclusion]. . . . [T]he Alabama cases seem to resolve the question on an ad hoc basis in which the circumstances determine whether a person should be bound by or entitled to the benefits of a judgment." *Hughes v. Martin*, 533 So. 2d 188, 191 (Ala. 1988) (quoting Joseph Francis Danner, *Issue Preclusion in Alabama*, 32 Ala. L. Rev. 500, 520–21 (1981)); *accord Leon C. Baker, P.C.*, 821 So. 2d at 165.

Significantly, this Court has explained that Alabama "follows an expansive definition of privity, which includes not only a successive interest to the same property right, but also 'an identity of interest in the subject matter of litigation.'" *Wood*, 323 F.3d at 880 n.10 (finding that defendant-state trooper in a § 1983 action shared an identity of interest with the State of Alabama in the plaintiff's prior prosecution and, therefore, privity was established); *accord Hunter v. City of Leeds*, 941 F.3d 1265, 1274 (11th Cir. 2019) ("Alabama's expansive definition of privity 'includes not only a successive interest to the same property right, but also "an identity of interest in the subject matter of [the] litigation."'" (alteration in original) (quoting *Wood*, 323 F.3d at 880 n.10)); *see also Coyle v. Ala. Power Co.*, 611 So.

14

2d 1019, 1021 (Ala. 1992) ("Where there is no identity of interest, privity does not exist."); *Franklin v. Dean*, No. 2:11-CV-683-WKW, 2013 WL 1867105, at *8 (M.D. Ala. May 3, 2013) (applying Alabama law of issue preclusion to find an attorney was in privity with a client in prior litigation as the attorney and client "shared the same interest in the state-court action because each had a stake in obtaining a garnishment judgment against" plaintiff's "bank account for payment of the money judgment"); *City of Montgomery v. Vaughn*, 138 So. 3d 996, 1004 (Ala. Civ. App. 2013).

In contrast, under the federal common law rules of nonparty preclusion privity cannot be based solely on an identity of interest. In *Taylor*, the Supreme Court in clarifying nonparty preclusion articulated the following six categories of exceptions to nonparty preclusion under federal common law: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate the issues through a proxy; and (6) a statutory scheme foreclosed successive litigation by nonlitigants. 533 U.S. at 892–895. The Supreme Court in *Taylor*, however, expressly rejected the virtual representation exception to the rule against nonparty preclusion. *Id.* at 904.

15

Subsequently, in *Griswold v. County of Hillsborough*, 598 F.3d 1289, 1293 (11th Cir. 2010), this Court affirmed the district court's finding that Griswold was in privity with two companies for which he was the president and sole shareholder such that Griswold's claims under 42 U.S.C. §§ 1981, 1983, and 1985 were barred under the doctrine of res judicata by a previous judgment against the companies. Although the district court had found that Griswold and the companies were in privity because their interests were "so closely aligned" that the companies were Griswold's "virtual representative" in the previous litigation, *Griswold*, 598 F.3d at 1292, we did not affirm on that basis. This Court explained that "[i]n this Circuit, '[t]he doctrine of virtual representation provide[d] in essence that "a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative."'" *Id.* (second and third alterations in original) (quoting *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1287 (11th Cir. 2004)). We noted, however, that because the Supreme Court in *Taylor* disapproved of the theory of virtual representation for purposes of federal common law nonparty issue preclusion, "a court may no longer find privity based solely on a similarity of interests." *Griswold*, 598 F.3d at 1293. Nonetheless, this Court affirmed the district court's finding that Griswold was in privity with the companies based on one of the established exceptions to the federal common law rule against nonparty preclusion articulated in *Taylor*—that privity was established

16

because Griswold assumed control of the litigation. *Id.* at 1292–93.  Therefore, unlike Alabama's expansive view of privity, federal common law rules of issue preclusion do not permit a finding of privity based solely on similar or closely aligned interests, and therefore are not substantively similar to Alabama's rule on this particular question.

Given the above principles, the district court applied the incorrect legal standard in determining whether Sellers and Sellers/Gardner were in privity.  Here, the district court applied federal rules of nonparty issue preclusion in determining the preclusive effect of the declaratory judgment on Sellers/Gardner's claim under the direct-action statute.  Specifically, the district court relied on *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312 (11th Cir. 2012), a trademark case arising under federal question jurisdiction and applying federal rules of issue preclusion, and concluded that privity did not exist in the proper configuration between Sellers, as assignee, and Gardner, as assignor.  Because the declaratory judgment action arose in diversity, however, the district court was required to apply Alabama's rules of nonparty issue preclusion in determining whether privity existed between Sellers and Sellers/Gardner in the declaratory judgment action.  *See Gen. Mills, Inc.*, 846 F.3d at 1340.  Accordingly, because the federal rules and Alabama's rules of nonparty issue preclusion in this context are not substantively similar, we hold that the district court applied the incorrect legal

17

standard and thereby abused its discretion when it denied Nationwide's motion in limine.

## IV.    CONCLUSION

Because the district court applied the incorrect legal standard in denying Nationwide's motion in limine, we vacate the final judgment and remand for the district court to apply Alabama's rules of issue preclusion to determine the issue of privity in the first instance. *See id.* at 1340 ("Whether parties were in privity is a factual question that should be decided in the first instance by the district court."); *see also Griswold*, 598 F.3d at 1292 (stating that "whether a party is in privity with another for preclusion purposes is a question of fact" (quoting *Pemco Aeroplex, Inc.*, 383 F.3d at 1285)). We express no opinion on the ultimate merits of Nationwide's argument as to privity.

VACATED and REMANDED for further proceedings consistent with this opinion.