A00A0954, A00A0955. PARK PRIDE ATLANTA, INC. v. CITY OF ATLANTA; and vice versa.
A00A0994. GREAT AMERICAN INSURANCE COMPANY v. CITY OF ATLANTA et al.
(541 SE2d 687)

POPE, Presiding Judge.

On October 9, 1993, Barbara Starr, a Hands On Atlanta volunteer participating in a park beautification project at Adams Park, was killed when a dump truck belonging to the City of Atlanta and being operated by a City employee, Ronnie Glenn, rolled backward crushing her. Her husband, John Starr, was seriously injured in the accident. The City's Department of Parks, Recreation and Cultural Affairs had furnished the truck and its driver for the project that day. About ten minutes before the incident, Glenn had parked the truck on a hill and left it unattended.[1]

On September 21, 1995, having earlier provided ante litem notice to the City, John Starr, individually and as the executor of the estate of Barbara Starr, filed suit against the City, Glenn, and several employees of the City's Department of Parks, Recreation and Cultural Affairs. In defending Starr's wrongful death and personal injury action, the City asserted it was immune to suit because it had been engaged in the performance of a government function, the maintenance and operation of public parks, at the time of the Starr tragedy. Throughout discovery, the City repeatedly denied the existence of any insurance coverage. In April 1997, the City contacted Great American Insurance Company, the insurer for Park Pride Atlanta, Inc., for the first time.[2] Great American responded with a full reservation of rights.

On June 2, 1997, nearly four years after Barbara Starr's death, the Atlanta City Council passed a resolution authorizing the City attorney to settle the Starr lawsuit for $500,000 and, if necessary, to pursue a claim for indemnification against Park Pride and Great American. The City neither discussed nor sought approval for this

---

[1] After an investigation by police, Glenn was charged with "failure to set brakes and turn wheels," and homicide by vehicle.

[2] Park Pride Atlanta, a nonprofit organization that coordinated volunteers to beautify City parks, was not named as a defendant in the Starr complaint. As a community liaison, Park Pride solicited corporate and civic support for park beautification projects, primarily providing service to the Parks and Recreation Department of the City.

settlement from Park Pride notwithstanding the City's position that Park Pride would ultimately be responsible for the cost of the settlement under an indemnification agreement. Nor did the City obtain the approval of Great American before entering the settlement.

Having resolved the Starr litigation, the City and its truck driver, Glenn, sued Park Pride and Great American on June 23, 1997. The City sought indemnification from Park Pride under a service agreement and sued Great American, Park Pride's insurer, for breach of contract. The City asserted an additional claim against Park Pride for negligence in the event that Park Pride's insurance policy with Great American did not provide the coverage desired.

In three interrelated appeals, Park Pride, the City, and Great American appeal the trial court's rulings on their respective motions for summary judgment. Park Pride appeals the denial of its motion for summary judgment and the grant of summary judgment on the issue of its indemnification of the City. The City asserts that the trial court erred in failing to rule as a matter of law that the claim upon which the City sued Park Pride was covered by the insurance policy. Great American appeals the trial court's failure to find that no coverage was afforded to the City, that the City otherwise breached conditions precedent to any coverage and so is barred from recovery, and that the City lacked standing to sue Great American.

### Case No. A00A0954

In this appeal, Park Pride contends that the trial court erred by granting the City's motion for summary judgment and in denying its own motion for summary judgment.

1. Park Pride asserts that the City's attempt to be indemnified for its own negligence violates public policy. It also claims that the language contained in the indemnification agreement is inadequate to require Park Pride to indemnify the City for the City's own negligence. We agree with the latter contention.

Public policy is reluctant to cast the burden for negligent actions upon those who are not actually at fault. *Allstate Ins. Co. v. City of Atlanta*, 202 Ga. App. 692, 693 (415 SE2d 308) (1992). Public policy seeks to encourage people to exercise due care in their activities for fear of liability, rather than to act carelessly cloaked with the knowledge that an indemnity contract will relieve such indifference. Id. Unless a contract for indemnification explicitly and expressly states that the negligence of the indemnitee is covered, courts will not interpret such an agreement as a promise to save the indemnitee from his own negligence. *Southern R. Co. v. Union Camp Corp.*, 181 Ga. App. 691, 692 (1) (353 SE2d 519) (1987). Due to public policy concerns, absent explicit language to the contrary, an indemnity agreement

cannot be interpreted to hold an indemnitee harmless from its own negligence. *Ga. State Tel. Co. v. Scarboro*, 148 Ga. App. 390, 391 (2) (251 SE2d 309) (1978). The words of a contract of indemnification, moreover, must be construed strictly against the indemnitee. Id. "[A]nd every presumption is against such intention." *Batson-Cook Co. v. Ga. Marble Setting Co.*, 112 Ga. App. 226, 230 (144 SE2d 547) (1965). When an indemnity agreement is ambiguous, such ambiguity must be construed against the drafter, here the City. *Scarboro Enterprises v. Hirsh*, 119 Ga. App. 866, 870 (2) (169 SE2d 182) (1969). In reviewing a contract, "Georgia courts never imply an agreement to indemnify another for one's own negligence in the absence of express language." *Central of Ga. R. Co. v. Lester*, 118 Ga. App. 794, 801 (2) (165 SE2d 587) (1968).

With those rules of construction in mind, we review the indemnification agreement between Park Pride and the City. Paragraph 4 of the service agreement provided:

> Park Pride agrees to protect and hold harmless the City, its officers, agents and employees, from any and all claims, demands, actions, causes of action, suits, damages, loss and expense of any kind whatever kind or nature to any person or to any property for any activity sponsored by or coordinated by Park Pride. Insurance requirements are attached and identified as Exhibit "B."

Although the sweep of this indemnification wording may initially appear to indemnify the City "against any and all claims," this language is bereft of any express or explicit statement about coverage for the City's own negligent acts or omissions done by the City's own employees. See *Southern R. Co.*, 181 Ga. App. at 691 (1). Because this indemnity contract failed to expressly, plainly, clearly, and unequivocally state that Park Pride would indemnify the City from the City's own negligence, Park Pride incurred no obligation to indemnify the City for its loss in settling the Starr lawsuit against the City. Id.; compare *Gough v. Lessley*, 119 Ga. App. 275, 277 (166 SE2d 893) (1969).

Nor does the hold harmless clause in the insurance/bonding agreement authorize a different result. In pertinent part, the insurance agreement provided:

> The Contractor [Park Pride] agrees to indemnify and hold harmless the City of Atlanta from any and all losses, expenses, demands and claims against the City of Atlanta sustained or alleged to have been sustained in connection with or to have arisen out of or resulting from the perfor-

mance of work by the Contractor [Park Pride] or any Sub-Contractor employed by the Contractor [Park Pride] or any of their officers, agents or employees.

But here, the claims asserted in the Starr litigation did not arise from the performance of work by Park Pride or by anyone employed by Park Pride. No suggestion was even made that Park Pride was in any way responsible for the tragedy or for the use, control, or direction of the City's vehicle or its driver. On the contrary, the allegations involved only negligent acts and omissions committed by the City, City employees, and City officials. The gravamen of the Starr complaint was that Glenn, an improperly supervised and poorly trained employee of the City, negligently operated a City-owned truck, by failing to turn the wheels and properly secure the brakes and by neglecting to place chocks under the wheels to prevent the truck from rolling downhill. The suit also alleged that the City failed to properly maintain, inspect, and service its dump truck. In these circumstances, Park Pride incurred no obligation to indemnify the City for its own loss in settling the Starr lawsuit lodged against the City. *Lester*, 118 Ga. App. at 801 (2).

2. Park Pride contends it is entitled to summary judgment on the City's claim for negligence because the City reviewed and approved the insurance coverage that was procured. Park Pride also argues that the City's theory of recovery is based on a faulty premise, i.e., if Park Pride's insurance did not cover the City's payment to settle the Starr litigation, then Park Pride was negligent in obtaining insurance.

The service agreement required Park Pride to satisfy certain insurance requirements, and Park Pride did so. The undisputed evidence demonstrates that Park Pride procured both commercial general liability and business automobile insurance. The City was named as an additional insured only as to the commercial general liability insurance and not the automobile policy. Subsection D of the insurance/bonding agreement stated:

In the event the Contractor does not own any automobiles in the corporate name, non-owned vehicle coverage shall apply and must be endorsed on either the contractor's personal automobile policy or the Comprehensive General Liability coverages (c) required under this contract.

Park Pride obtained a $500,000 policy that provided coverage for nonowned and hired vehicles. Because Park Pride did not own any automobiles in its corporate name, it expressly asked the City to allow it to satisfy liability insurance coverage on the basis of proof of

individual automobile insurance. A memorandum directed to the City from William C. Gary, Jr., the Acting Director of the Bureau of Parks, dated September 24, 1991, supported this approach and sought approval for Park Pride to obtain only $500,000 in general liability insurance, a $66,600 fidelity bond, and workers' compensation coverage. As to liability protection, Gary recommended:

> Because Park Pride Atlanta neither owns nor leases automobiles, it is proposed that the automobile liability requirement be met by requiring Park Pride Atlanta employees to submit proof of liability insurance coverage on their personal vehicles. If your approval of the preceding is given, Park Pride Atlanta will move quickly to obtain proof of the necessary coverage so that the execution of the contract can resume.

Dennis E. Stover, the manager of the City's Risk Management Division, responded by letter of October 8, 1991, as follows: "[t]he Risk Management Division has reviewed the insurance coverages submitted by Park Pride Atlanta and found them acceptable." Because the City approved the insurance coverage obtained by Park Pride, the City cannot now be heard to complain that Park Pride somehow breached a duty to obtain some other coverage. See *Hewett v. Carter*, 215 Ga. App. 429, 430 (1) (450 SE2d 843) (1994).

3. In light of the above determinations, we need not address Park Pride's remaining assertions of error.

### Case No. A00A0955

In this appeal, the City claims that the trial court erred in refusing to rule as a matter of law that the claim upon which the City sued Park Pride is a claim covered by the insurance policy. The City contends that under the terms of the policy, the indemnification agreement constituted an "insured contract."

Subpart 6 of the section pertaining to an "insured contract" expressly excluded coverage for "that part of any contract or agreement that: b. pertains to the loan, lease or rental of an 'auto' to you or any of your employees, if the 'auto' is loaned, leased or rented with a driver." Thus, this portion did not apply to this situation.

Although conceding that the commercial general liability policy did not apply, the City asserts that the automobile policy provided coverage.[3] Without question, the Starr incident involved a motor

---

[3] Exclusion 2g of the commercial general liability policy expressly eliminated coverage for bodily injury arising out of the ownership, maintenance, use, or entrustment of any automobile including operations for loading and unloading.

vehicle accident and was investigated and prosecuted by police as such. But, as discussed previously, the automobile section did not designate the City as a named insured. Equally defeating to any automobile liability coverage is the fact that under Section II — Liability Coverage, the policy's definition of "insured" specifically does not include "the owner or anyone else from whom you hire or borrow a covered 'auto.'"

Robert R. Hamby, an independent insurance broker whose agency procured the policy with Great American for Park Pride, testified that it was never the intent of the insurance contracts to provide any coverage to the City for City vehicles or for City employees. Hamby explained that the insurance coverage was not designed to create liability for Park Pride to defend the City for the City's own actions but was obtained to fulfill Park Pride's obligation to protect the City from claims for which Park Pride was the alleged wrongdoer.[4] See *Batson-Cook Co.*, 112 Ga. App. at 230. Hamby testified that the coverage was designed to protect the City in the event that Park Pride did something that created liability for the City but not the reverse.

Michael Marklay, a litigation specialist with Great American, explained that Park Pride's insurance policy with Great American would have provided coverage if a person from Park Pride had caused an accident or became involved in an accident while operating a City vehicle. But here, it is undisputed that it was a City employee, being paid by the City, who was operating the City's vehicle at the time of the incident. Marklay testified, "I see no way that a City person using a City vehicle could be covered by this policy." In light of this evidence, it cannot be said that the trial court erred in denying the City's motion. *Mountain Bound v. Alliant FoodSvc.*, 242 Ga. App. 557 (530 SE2d 272) (2000).

### Case No. A00A0994

In this appeal, Great American contends that it was entitled to summary judgment because Park Pride's policy did not afford any coverage to the City. Great American further asserts that the City is otherwise barred from recovery due to the City's breach of conditions precedent to any coverage.

Even assuming solely for the sake of argument only that the City had been entitled to insurance coverage for the tort claims asserted in the Starr lawsuit, the City's blatant failure to provide proper

---

[4] According to Hamby, the City self-insured its own fleet and ordinarily relied upon its tort immunity, and if the City opted to obtain coverage in the marketplace, the City would have to "bid out" its entire fleet.

notice to Great American forecloses coverage as a matter of law. *Southeastern Express Systems v. Southern Guaranty Ins. Co.*, 224 Ga. App. 697, 702 (482 SE2d 433) (1997). While "as soon as practicable" affords some leeway in providing notice of a claim or suit or occurrence to an insurer, a lengthy, unjustifiable delay may be found as a matter of law to have been so unreasonable as to foreclose coverage. *Caldwell v. State Farm Fire &c. Ins. Co.*, 192 Ga. App. 419, 420-421 (2) (385 SE2d 97) (1989).

Notwithstanding the policy's requirement of prompt notice to Great American about any claim or occurrence, it is undisputed that the City did not notify Great American about the incident until April 9, 1997, nearly three and a half years after it occurred. This delay was unreasonable as a matter of law, especially since the record demonstrates that the City received ante litem notice of Starr's claims on December 21, 1993. Moreover, the City, as the drafter of the service agreement which included the insurance provisions, was obviously responsible for knowing the contents of its own documents. Given the plain terms of the policy, the fact that the City was not named as an additional insured under the automobile section of the policy, the fact that the City's delay in notifying Great American was unreasonable as a matter of law, and in light of the uncontroverted testimony of Hamby and Marklay, we find that Great American was entitled to judgment as a matter of law. *Caldwell*, 192 Ga. App. at 421 (2).

*Judgment affirmed in Case No. A00A0955. Judgments reversed in Case Nos. A00A0954 and A00A0994. Miller and Mikell, JJ., concur.*

## DECIDED NOVEMBER 7, 2000.

*Weissman, Nowack, Curry & Wilco, Leigh M. Wilco, Charles B. Waters, Jr.*, for Park Pride Atlanta, Inc.

*Phears & Muldovan, H. Wayne Phears, Wendy A. Jacobs, Kelly M. Fitzgerald, Richard O. Samms, Sarah I. Mills, Kendric E. Smith*, for City of Atlanta.

*Webb, Carlock, Copeland, Semler & Stair, Robert C. Semler*, for Great American Insurance Company.